UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONNIE WILLIAMS | * | CIVIL ACTION |
| VERSUS | * | NO. 22-1141 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | * | SECTION "L" (2) |

## REPORT AND RECOMMENDATION

Pursuant to § 405(g) of the Social Security Act ("the Act"), Plaintiff Ronnie Williams seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II and Part A of Title XVIII of the Act and Supplemental Social Security ("SSI") under Title XVI of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.   PROCEDURAL HISTORY

Plaintiff Ronnie Williams is now a 53-year-old man who filed an application for DIB and SSI alleging disability commencing on March 10, 2018.  ECF No. 8 at 207, 214.  His relevant work history includes employment as a surgical technician, sterilizer, medical technician, and supply clerk.  *Id.* at 36, 60, 73, 96, 117, 249, 251-53, 262-63.  His age classification was that of a "younger person" on the onset date, but changed to "closely approaching advanced age."  20 C.F.R. §§ 404.1563(c), (d).  He alleges disability due to degenerative disc disease, diabetes mellitus, hypertension, obstructive sleep apnea, obesity, PTSD, anxiety, and depression, but the appeal

---

[1] 42 U.S.C. §§ 405(g).

focuses on his "main disability"—PTSD, anxiety and depression.  ECF No. 8 at 49-55, 62-68, 240, 261.

Williams applied for DIB on March 13, 2020 and SSI on March 30, 2020.  ECF No. 8 at 207, 214.  Both applications were denied at the agency level on August 4, 2020.  ECF No. 8 at 45, 47, 121.  Plaintiff requested reconsideration on September 30, 2020 (ECF No. 8 at 125), and his claims were denied on reconsideration on March 19, 2021.  ECF No. 8 at 75, 77, 79-98, 100-119, 131.  Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") (ECF No. 8 at 135), and the matter was heard on August 3, 2021 before ALJ Thomas G. Henderson. ECF No. 8 at 33-44.  Williams appeared and testified at the hearing and was represented by counsel, J. Bryan Jones, III.  ECF No. 8 at 35.  Patricia Ehlinger, an impartial vocational expert, also appeared and testified at the hearing.  *Id*.

On August 18, 2021, ALJ Henderson issued a decision denying Williams' applications for SSI and DIB.  ECF No. 8 at 14-16, 17-28.  After the Appeals Council denied review on March 8, 2022, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review.  ECF No. 8 at 5-7.  Williams filed this action on April 26, 2022.  ECF No. 1.  In accordance with this Court's Scheduling Order, Williams filed a motion for summary judgment on August 25, 2022, and the Commissioner filed a cross-motion for summary judgment on October 5, 2022.  ECF Nos. 9, 10, 12.

## II.    STATEMENT OF ISSUES ON APPEAL

Williams identifies three issues for appeal:

1. The ALJ found that the claimant had no limitations in regard to understanding, remembering, or applying information; however, this finding is inconsistent with the undisputed examining psychiatric evaluations that are in the record which both found that he had issues with his memory based on informal testing.  The ALJ instead relied on a non-examining evaluation which violates 20 CFR 404.1527(c)(1).  This is not proper, and therefore, this finding is not supported by substantial evidence.

2. The ALJ found that the claimant had a moderate limitation in concentrating, persisting, or maintain pace at a competitive level in an 8-hour workday. This is in contravention of both examining psychiatric evaluations which found that the claimant has moderate to marked impairment in one evaluation and marked impairment in the other evaluation. The ALJ instead relied on the non-examining evaluation which violates 20 CFR 404.1527(c)(1). This is not proper, and therefore, this finding is not supported by substantial evidence.

3. These two errors are critical, with the second error being the most critical. If the ALJ would have found that the claimant had a marked limitation in concentrating, persisting, or maintaining pace at a competitive level in an 8-hour workday as consistent with the medical evidence, the vocational rehabilitation expert testified that the veteran could not perform any work and therefore, a finding of disabled would have been warranted.[2]

## III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1. The claimant meets the insured status requirements of the Social Security Act through September 23, 2023.

2. The claimant has not engaged in substantial gainful activity since March 10, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease, diabetes mellitus, hypertension, obstructive sleep apnea, obesity, PTSD, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except as follows: He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps/stairs, stoop, kneel, couch, and crawl. He can understand, remember, and carry out simple, routine, and repetitive work tasks on a regular and continuing basis. He can perform work involving no close coordination with coworkers and supervisors and only occasional public interaction in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 27, 1969 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

---

[2] *See* ECF No. 10-1 at 23.

3

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).[3]

## IV.   ANALYSIS

### A.  Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[4]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[5]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[6]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[7]

---

[3] ECF No. 8 at 19-28.
[4] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[5] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[6] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[7] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[8]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[9]  The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[10]

To be considered disabled and eligible for SSI,[11] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[12]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[13]  To qualify as a disability, the impairment must be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[14]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[15]  Thus, to be considered disabled and

---

[8] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

[9] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[10] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

[11] The relevant law and regulations governing claims for disability insurance benefits and SSI are identical.  *Carmon v. Barnhar*t, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[12] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[13] 42 U.S.C. § 423(d)(3).

[14] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[15] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

eligible for benefits,[16] the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[17]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[18] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[19] The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[20] When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[21]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. At step 3, the ALJ must identify every Listing that could apply to the claimant.[22] However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing

---

[16] The relevant law and regulations governing claims for DIB and supplemental security income are identical. *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[17] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[18] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

[19] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[20] *Id.* at 448.

[21] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[22] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

court may only vacate a judgment if the "substantial rights" of a party have been affected.[23]  With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[24]

### B.  Factual Background

Plaintiff testified that he was 52-years old (now 53) with a college education.  ECF No. 8 at 36.  From 2007 to 2019, he worked in various medical positions, including as a surgical technician, sterilizer, medical assistant, endoscopy technician, and a medical supply clerk.  *Id*. Plaintiff stopped working in March of 2018.  *Id.* at 36, 207.  Williams explained that he lives with his elderly mother and serves as her primary caretaker.  *Id.* at 37, 241.  He does not drive due to "limitations because of [his] disabilities" and an expired driver's license.  *Id*. at 37-38.

Plaintiff, upon questioning from his counsel, confirmed that he has been diagnosed with PTSD/depressive disorder as a result of sexual trauma he experienced while serving in the military and working at the VA.  *Id. at* 38.  As a result of these conditions, Williams endorsed difficulty with memory, communication, concentration, and persistence and has issues trusting other people. *Id.* at 38-39.  He also described hand, foot, leg, and sporadic pain due to diabetic neuropathy.  *Id.* at 39.  Plaintiff testified that he has the ability to stand for ten-minute intervals, sit for up to thirty-minute intervals, and lift up to six pounds.  *Id.* at 40.  He sometimes becomes dizzy and falls asleep during the day due to his sleep apnea.  *Id*.; *see also id.* at 272.

In his Function Report, Plaintiff indicates that "all activities" that he could perform prior to the onset of his condition are no longer possible for him.  ECF No. 8 at 241.  Plaintiff can go to

---

[23] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).
[24] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating claimant bears burden at step three to demonstrate that he meets a given Listing).

the store, but he usually has his groceries delivered and he pays for housekeeping and yard work. *Id.* at 41, 243.  He makes sandwiches but otherwise cooks less often now.  *Id.* at 242.  He performs light housework including sweeping and taking garbage to the curb.  *Id*.  He indicates he has trust issues, with difficulty getting along with family, friends, and others due to anxiety.  *Id.* at 39, 245-46.  Plaintiff can walk a half mile before needing to stop and rest.  *Id*. at 245.  He describes a thirty-minute attention span and an ability to follow written and spoken instructions well.  *Id*.  He notes that his interactions with authority figures and ability to handle stress are "not good at all," but he can handle changes in routine somewhat well.  *Id.* at 246.  Due to "a form of PTSD," Williams struggles when "people or strangers get [too] close to [him]."  *Id*.

### C. **Vocational Expert Testimony**

The vocational expert, Patricia Ehlinger testified at the hearing.  Plaintiff's counsel raised no objection to Ms. Ehlinger's qualifications. ECF No. 8 at 41.

Ehlinger classified Plaintiff's work as a surgical technician as DOT reference 079.374-022, strength level light, SVP: 6; his work as a medical technician as DOT reference 078.261-038, strength level light, SVP: 7; and his work as a supply clerk as DOT reference 222.387-058, strength level heavy, SVP: 4.  *Id*. at 42.  In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, education, and work experience who is limited to light work, only occasional postural activities, no climbing of ladders, ropes or scaffolds, and who is limited but could understand, remember and carry out simple, routine, repetitive tasks on a regular and continuing basis but would be precluded from close coordination with coworkers and supervisors and only occasional public interaction.  *Id*. at 42-43.  In response, Ehlinger testified that there was work that accommodated those limitations, including 111,000

8

positions of office helpers (light, SVP: 2), 150,000 positions of food preparation workers (light, SVP: 2), and 200,000 laundry worker positions (light, SVP: 2). *Id.* at 43.

Altering the hypothetical, the ALJ asked whether there would be work available if the person was limited to sedentary work within the meaning of the DOT in addition to the above limitations, and Ehlinger indicated that there was not. *Id.* at 43. ALJ Henderson then asked Ehlinger to explain the effect that difficulty with concentration up to twenty percent of the day would have on the jobs available under his first hypothetical, and she explained that it would eliminate all work. *Id.* at 43-44.

### D.  Medical Evidence

I have reviewed the medical records and the ALJ's summary of the medical evidence. ECF No. 8 at 315-456, 457-60, 461-63, 464-66, 467-79, 480-87, 488-517, 518-88. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### E.  Plaintiff's Appeal

At step 1, the ALJ determined that Williams meets the insured status requirements through September 30, 2023, and that he has not engaged in substantial gainful activity since March 10, 2018.[25] At step 2, the ALJ found severe impairments of degenerative disc disease, diabetes mellitus, hypertension, obstructive sleep apnea, obesity, PTSD, anxiety, and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)) that significantly limit the ability to perform basic work activities.[26] At step 3, the ALJ found that, considering all of Plaintiff's medically determinable

---

[25] ECF No. 8 at 19.
[26] *Id*. at 19-20.

impairments, he did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.[27]

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1467(b) and 416.967(b) with certain specified additional limitations.[28]  At step 4, ALJ Henderson determined that Plaintiff is unable to perform past relevant work as a surgical technician (DOT 079.374-022), medical technician (DOT 078.261-038), or supply clerk (DOT 222.387-058) as that work requires performance of work-related activities precluded by his RFC.[29]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff could perform other work available in significant numbers in the national economy.[30]

Plaintiff objects to the ALJ's analysis and conclusions in the fourth step, contending that these alleged errors led to an improper conclusion in the fifth step. Specifically, Plaintiff assigns as errors the ALJ's findings that:

- Plaintiff has no limitations in regard to understanding, remembering, or applying information; and

- Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace at a competitive level in an eight-hour workday.[31]

Plaintiff argues that the ALJ improperly relied on non-examining evaluations rather than the "undisputed examining psychiatric evaluations . . . in the record" in reaching these conclusions, which he contends violates 20 C.F.R. § 404.1527(c)(1).  He posits that these errors are critical because, if the ALJ would have found that Plaintiff had a "marked limitation in concentrating,

---

[27] *Id.* at 20.
[28] *Id.* at 21-26.
[29] *Id.* at 26-27.
[30] *Id.* at 27-28.
[31] ECF No. 10-1 at 2-3.

persisting or maintaining pace at a competitive level in an 8-hour workday  as consistent with the medical evidence," he would not have been eligible to perform any work according to VE testimony, and a finding of disabled would have been warranted.[32]

1. **Consideration of Medical Opinions and Prior Medical Findings in the Residual Functional Capacity Determination**

a. Applicable Regulation

Plaintiff argues that the ALJ 's findings are not supported by substantial evidence because he relied on non-examiner evaluations by the state and reconsideration level psychiatric examiners rather than "undisputed examining psychiatric evaluations."  Plaintiff argues that the ALJ thus violated 20 C.F.R. § 404.1527, which provides guidance on how the Administration "consider[s] and articulate[s] medical opinions and prior administrative findings."[33]  Plaintiff cites 20 C.F.R. § 404.1527(c)(1), which generally states that the SSA gives "more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not. . . ."[34]  Notably, however, 20 C.F.R. § 404.1527(c)(1) applies only to claims filed *before* March 27, 2017.  For claims filed *after* March 27, 2017, 20 C.F.R. § 404.1520c applies.[35]

Plaintiff's claims were filed after, not before, March 27, 2017.[36]  Accordingly, Plaintiff's claims are governed by 20 C.F.R. § 404.1520c,[37] which provides that "ALJs are no longer required to give controlling weight to a treating physician's opinion."[38]  Instead, the ALJ must consider a set of factors in determining "what weight, if any, to give a medical opinion."[39]  Supportability

---

[32] ECF No. 10-1 at 3.

[33] 20 C.F.R. § 404.1527.

[34] 20 C.F.R. § 404.1527(c)(1).

[35] *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) (comparing the applicability of 20 C.F.R. § 404.1527 (2016) and 20 C.F.R. § 404.1520c and applying the latter to a claim filed in 2019).

[36] ECF No. 8 at 207, 214.

[37] *Webster*, 19 F.4th at 719 (citing 20 C.F.R. § 404.1520c).

[38] *Id*.; *see also Winston v. Berryhill*, 755 F. App'x. 395, 402 n.4 (5th Cir. 2018) (noting that the SSA has "changed its regulations so that ALJs are no longer required to assign each medical opinion a weight").

[39] *Webster*, 19 F.4th at 719 (citing  20 C.F.R. § 404.1520c).

and consistency are the "most important factors" considered when determining the persuasiveness of a medical source's opinions or prior administrative medical findings.[40]

The supportability factor hinges on relevance; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the [opinion or finding] will be."[41] Similarly, when assessing consistency, which is the other "most important" factor, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the [opinion or finding] will be."[42]

Other factors in the persuasiveness analysis include relationship with the claimant (length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and nature of examining relationship) and specialization.[43] The "examining relationship" subfactor, instead of directing ALJs to give "more weight" to the medical opinion of an examining source than that of a non-examiner, now advises that a medical source "*may* have a better understanding" of a claimant's impairments if that provider examines the claimant than if the medical source "only reviews evidence in [the claimant's] folder."[44] This multi-factor analysis "enables courts to focus on 'the content of the evidence [rather] than on the source.'"[45]

---

[40] 20 C.F.R. § 404.1520c; *see also Stuckey v. Comm'r of Soc. Sec.*, No. 21-200, 2022 WL 4534963 at *1 (M.D. La. Sept. 28, 2022).
[41] 20 C.F.R. § 404.1520c(c)(1).
[42] 20 C.F.R. § 404.1520c(c)(2).
[43] *Id*. at 20 C.F.R. § 404.1520c.
[44] *Id*. at 20 C.F.R. § 404.1520c(c)(1).
[45] *Webster,* 19 F.4th at 719 (quoting 82 Fed. Reg. 5853 (Jan. 18, 2017)).

b. <u>ALJ Henderson's Consideration of Medical Opinions and Prior Medical Findings Centers Supportability and Consistency in Accordance with 20 C.F.R. § 404.1520c</u>

(1) <u>Consideration of All Medical Opinions in Making the RFC Determination</u>

Initially, this Court's role is not to "reweigh the evidence, try the issues de novo, or substitute [its] judgment for that of the [Commissioner]."[46]  Rather, the Court is tasked with determining whether substantial evidence supports the ALJ's decision and whether he applied the correct legal standard.[47]  It is the *ALJ's* responsibility to determine an applicant's limitations and their application to the RFC.[48]

Plaintiff asserts that the ALJ relied only on the opinions of the non-examining state agency psychological consultants and disregarded the opinions of Dr. Mancuso and Dr. Dennis in determining RFC.[49]  The record before the Court reflects otherwise.  In making his RFC determination, the ALJ reviewed the record as a whole and "fully considered the medical opinions and prior administrative medical findings."[50]  He outlined the opinions of Dr. Mancuso, who at the end of her report found no impairment in the ability to understand, remember or apply information, moderate impairment in the ability to interact with others, moderate impairment in concentration, persistence and pace, and mild impairment in the ability to adapt or manage oneself.[51]  He found her opinion to be persuasive based on the comprehensive psychiatric examination and consistent with clinical observations reflected in the treatment records.[52]

ALJ Henderson also addressed the opinions of the non-examining state agency psychological and medical consultants at the initial and reconsideration levels, Dr. Julia Doolin

---

[46] *Newton*, 209 F.3d at 452.
[47] *Winston*, 755 F. App'x at 398 (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[48] *Webster*, 19 F. 4th at 718.
[49] ECF No. 10-1 at 2-3, 5.
[50] ECF No. 8 at 21-26.
[51] *Id.* at 67; *see also id.* at 87, 469-76.
[52] *Id.* at 25.

and Dr. Margaret Hauck, finding them to be partially persuasive.[53]  Dr. Hauck found no limitations in most categories with moderate limitation in the ability to maintain attention and concentration for extended periods, ability to work in coordination with or in proximity to others without being distracted, and the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and Dr. Doolin found mild to moderate limitation in functioning.[54]

ALJ Henderson also addressed the June 15, 2021, opinion of Dr. Dennis based on an April 30, 2019, assessment, noting his findings of measured executive functioning impairment, marked limitation in understanding, remembering or applying information and ability to apply information to a work setting as well as marked limitation in concentration, persistence and the ability to maintain work at a competitive pace, and the ability to interact with others.[55]  ALJ Henderson found Dr. Dennis' opinion not to be persuasive because he did not indicate that he conducted standard mental examination and his findings of marked limitations were belied by claimant's stated history.[56]  He also questioned the accuracy and veracity of Dr. Dennis' report as Dr. Dennis noted that claimant was a Tulane student at the time of the examination and certified addiction specialist, which Plaintiff denied at the hearing.[57]

ALJ Henderson's findings set forth his assessment of the supportability and consistency of each relevant medical opinion.  He approached the RFC determination in a holistic manner,

---

[53] *Id.*
[54] *Id.* at 58-59, 88.
[55] *Id.* at 26.
[56] *Id.*
[57] *Compare id.* at 583 *with* 41.

considering all prior medical opinions and findings as well as the medical records, Plaintiff's testimony, and his daily activities.

(2) <u>Limitations in Understanding, Remembering, and Applying Information</u>

Plaintiff's first assignment of error concerns the ALJ's finding that Plaintiff has no limitations in regard to understanding, remembering, and applying information. He asserts that this finding is inconsistent with the undisputed examining psychiatric evaluations in the record, both of which found that Plaintiff had issues with his memory based on informal testing. Citing the inapplicable 20 C.F.R. § 404.1527(c)(1) regulation, Plaintiff claims that the ALJ's finding is not proper and lacks substantial evidence because "in general, more weight is given to the opinion of the source that has examined you versus one that has not."[58]

Plaintiff's argument fails because, as discussed above, the appropriate analysis does not involve a determination of which source is owed more weight than another based on examination status but rather, which sources are most *persuasive* based on a totality of the circumstances factor-based inquiry.[59]   Applying the multi-factor analysis set  forth in 20 C.F.R. § 404.1520c, ALJ Henderson did properly consider and articulate all of the medical opinions and prior administrative findings in the record when determining Plaintiff's capacity to understand, remember, and apply information.

ALJ Henderson began his analysis by assessing the conclusions of Dr. Mancuso, who performed a psychiatric consultative examination of Plaintiff in July of 2020.[60]  He noted that Dr. Mancuso opined that Williams had a mild impairment of ability to understand, remember, and follow simple commands.[61] Dr. Mancuso also reported Plaintiff's denial of memory problems and

---

[58] ECF No. 10-1 at 5.
[59] 20 C.F.R. § 404.1520c; *Webster*, 19 F.4th at 419.
[60] ECF No. 8 at 467-79.
[61] *Id*. at 25.

noted that his attention and concentration were within normal limits based on her examination.[62] In assessing the persuasiveness of Dr. Mancuso's opinions, ALJ Henderson applied both of the "most important factors," i.e., supportability and consistency. The ALJ found that, while Dr. Mancuso's assessment that Williams had marked limitation in persistence and pace was not supported by the evidence, her assessment is "persuasive otherwise as it is supported by clinical observations during the psychiatric evaluation . . . and basically consistent with the clinical observations reflected in the claimant's treatment records."[63]

ALJ Henderson also considered the non-examining state agency psychological consultants' assessments at the initial and reconsideration levels in assessing Plaintiff's abilities to understand, remember, and apply information.[64] He noted that both consultants opined that Plaintiff had no limitation of ability to understand, remember, or apply information and explained why these assessments were partially persuasive.[65]

Finally, the ALJ considered the conclusions of Dr. Dennis, who performed a psychological assessment with evaluation of employability and rehabilitation issues.[66] Dr. Dennis opined that Plaintiff had a marked limitation in understanding, remembering, and applying information. ALJ Henderson found Dr. Dennis' conclusions and opinions non-persuasive because Dr. Dennis did not perform a standard mental status examination, and his opinions lacked supportability and consistency with evidence in the record.[67]

The ALJ's ultimate finding that Plaintiff has no limitation in his ability to understand, remember, and apply information is both supported by substantial evidence in the record and

---

[62] *Id*. at 472, 474.
[63] *Id*. at 25.
[64] *Id*. at 25, 49-61, 79-99.
[65] *Id*. at 25.
[66] *Id*. at 26.
[67] *Id*.

informed by each of the medical opinions and prior administrative findings in the record. ALJ Henderson applied the appropriate legal standard in considering each medical opinion by considering the supportability and consistency factors and making persuasiveness determinations in accordance with 20 C.F.R. § 404.1520c.

(3) <u>Limitations in Concentrating, Persistence, and Maintaining Pace</u>

Plaintiff next assigns as error ALJ Henderson's finding that Williams has a moderate limitation in his ability to concentrate, persist, and maintain pace.[68] Again citing the inapplicable 20 C.F.R. § 404.1527(c)(1) to support his assertion that the ALJ improperly considered medical opinions and prior administrative medical findings rather than examining physician evaluations, Plaintiff argues that the ALJ's finding was erroneous and not supported by substantial evidence.[69]

However, ALJ Henderson's analysis of Plaintiff's abilities to concentrate, persist, and maintain comports with the appropriate regulation, 20 C.F.R. § 404.1520c. The ALJ first assessed Dr. Mancuso's report, wherein she opined that Williams had a moderate to marked limitation in his ability to sustain effort and persist at a normal pace and an unimpaired ability to concentrate. The ALJ noted that Dr. Mancuso's finding of a marked limitation on the areas of persistence and pace was not supported by the evidence in the record, particularly "[i]n the context of the largely unremarkable mental status findings" she reported.[70]

ALJ Henderson also considered the opinions of the non-examining state agency psychological consultants in making his determination that Plaintiff has a moderate limitation in his ability to concentrate, persist, and maintain pace.[71] He noted that both consultants found Plaintiff to be moderately limited in ability to concentrate, persist, and maintain pace and found

---

[68] ECF No. 10-1 at 2-3.
[69] *Id.*
[70] ECF No. 8 at 25.
[71] *Id.*

the consultants' assessments to be "partially persuasive" altogether.  He addressed the "most important" factors, noting that, the assessments are "well supported by a narrative of the evidence and essentially consistent with such evidence."[72]

Finally, the ALJ addressed Dr. Dennis' conclusion that Plaintiff has a marked limitation in the areas of concentration, persistence, and ability to maintain pace.  As the record did not indicate that Dr. Dennis performed a standard mental status examination and his assessment conflicted with other evidence in the record and Plaintiff's testimony at the hearing, the ALJ had "doubts as to the accuracy and veracity of Dr. Dennis' report" and found his opinions not to be persuasive.[73]  ALJ Henderson appropriately considered the supportability and consistency of Dr. Dennis' opinions in determining that they were not persuasive.

    c.   Paragraph B and C Analyses

As his last assignment of error, Plaintiff asserts that, if the ALJ had found a marked limitation in his ability to concentrate, persist, or maintain pace, a finding of disabled would have been warranted because the vocational expert testified that such a limitation would preclude him from performing any work.[74]  However, with regard to mental impairments, the ALJ performed the required paragraphs B and C analyses under 20 C.F.R. Part 404, Subpart. P, Appendix 1, § 12.03; 20 C.F.R. § 404.1520a.[75]  Further, even if ALJ Henderson had determined that Plaintiff had a marked limitation in concentrating, persisting, or maintaining pace, that alone would not have established that Plaintiff met or medically equaled a listing under 12.04, 12.06, or 12.15, as Plaintiff suggests.  There must be at least two marked limitations or one extreme limitation to

---

[72] *Id*.
[73] *Id*. at 26.
[74] ECF No. 10-1 at 3.
[75] ECF No. 8 at 20.

satisfy the paragraph B criteria, and two limitations were not found by the ALJ after his review of the record and medical opinions.

ALJ Henderson properly assessed whether Claimant's mental impairment resulted in at least one "extreme" or two "marked" limitations in the following broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or pace; and (4) adapting or managing oneself.  Based on the record, ALJ Henderson determined that Plaintiff had  (1) no impairment in his ability to understand, remember, or apply information; (2)  moderate limitation in interacting with others; (3) moderate limitation in ability to concentrate, persist, and maintain pace; and (4) mild limitation in adapting and managing himself.[76]  After finding that Williams did not have either one "extreme" or two "marked" limitations, the ALJ properly moved to assess the paragraph C criteria, finding that the Plaintiff did not allege, and the record evidence did not establish the presence of paragraph C criteria.[77]

A review of the record reflects that ALJ Henderson's findings are supported by substantial evidence, as addressed above.

## V.    <u>CONCLUSION</u>

The ALJ applied the appropriate legal standards, and substantial evidence supports the ALJ's findings at steps 4 and 5. Further, the ALJ appropriately considered all of Plaintiff's medically determinable impairments and symptoms and medical opinions in the record in formulating the RFC based on the multi-factor analysis espoused in 20 C.F.R. § 405.1520c, which is applicable to Plaintiff's claim as it was filed after March 27, 2017.

---

[76] *Id.*
[77] ECF No. 8 at 20.

## VI.    <u>RECOMMENDATION</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 10) be **DENIED**, the Commissioner's Cross-Motion for Summary Judgment (ECF No. 12) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[78]

New Orleans, Louisiana, this <u>26th</u> day of October, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[78] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).